## McEwen Estate.

24

Argued March 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

re-argument refused August 12, 1943.

*Fred Taylor Ikeler*, with him *William Wallace Booth* and *Reed, Smith, Shaw & McClay*, for appellant.

*E. Russell Shockley*, Deputy Attorney General, with him *Theo L. Wilson* and *James H. Duff*, Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 30, 1943:

The Register of Wills of Clarion County, as agent for this Commonwealth, made a transfer inheritance tax appraisement of the assets of the estate of Laura R. McEwen, deceased. In the appraisement, all of the assets held by the Union Trust Company of Pittsburgh as Trustee under a deed of trust of F. C. McEwen and Laura R. McEwen were included as assets of the estate of Laura R. McEwen for inheritance tax purposes at an appraised value of $67,113.50. An appeal by the trustee

to the Orphans' Court was dismissed. This appeal followed.

The securities deposited under the trust agreement were contributed by F. C. McEwen and Laura R. McEwen, his wife, of Sligo, Clarion County, Pennsylvania. The largest part of these securities was contributed by the husband. The securities contributed by the wife were valued at $9,936.29. They delivered a revocable deed of trust dated November 18, 1932, to the Union Trust Company of Pittsburgh conveying these securities, in trust, to pay the net income in quarterly installments to the donors or the survivor of them for their lives and the life of the survivor. If F. C. McEwen predeceased his wife any investment or reinvestment was limited to legal investments for trustees. After the death of the survivor of the donors the trust was to terminate and the trustee was to sell the securities then constituting the trust estate within one year after the death of the survivor, and distribute the proceeds to the various beneficiaries named in the trust deed as provided therein. The agreement of trust provided that the donors should have the right, during their joint lives, to revoke the trust but "there shall be no right to the survivor of the donors to revoke this trust in any manner whatever". The trust was not revoked during the lifetime of F. C. McEwen and, therefore, at his death it became irrevocable. At his death, July 21, 1937, the inheritance tax appraisement did not include therein any part of the corpus of the trust, and his estate was audited and distributed in the usual course of administration. Laura R. McEwen died June 19, 1941, testate. The appraisement hereinbefore referred to for the entire value of the trust corpus as of the date of her death was made by the Register of Wills.

The trustee contends in this appeal that the liability for the inheritance tax in her estate must be limited to the portion of the securities in trust deposited by Mrs. McEwen, the amount of $9,939.29. It contends that the balance of the securities in trust, representing the se-

curities contributed by the husband was taxable and payable in the administration of the estate of F. C. McEwen, and the Commonwealth should have collected the transfer inheritance tax for that portion of his estate.

The Commonwealth's contention is that F. C. McEwen and Laura R. McEwen, his wife, owned an interest in the corpus of this trust as an estate by entireties. As the surviving spouse, the complete equitable ownership of the trust res vested in Mrs. McEwen. Therefore, when she died the trust res was all in her estate and so became subject to the transfer inheritance tax.

The Court below sustained this contention, saying: ". . . we have decided this case upon the theory that the donors in the trust created an estate by entireties in themselves, which, upon the prior death of the husband, vested the entire corpus and income of the trust in the wife so far as liability under the transfer inheritax law is concerned . . ."

We agree with the court below. By right of her survivorship, the wife became vested with an equitable interest in the trust res, which upon her death became subject to the tax.

We cannot agree with the appellant's argument as set forth in its brief that ". . . The only interest which Mr. and Mrs. McEwen had in the trust was their interest in the income for their joint lives and the life of the survivor . . ." There is an express reservation giving them the right to determine the trust during their joint lives. Upon such termination of the trust the securities would have had to vest in them as tenants by entireties. They thus had an interest and proprietorship in the trust res. We so held in *Lines's Estate*, 155 Pa. 378, 26 A. 728, where the settlor placed his personal property in trust reserving the right to modify or revoke the trust at any time prior to his death. In that case we said: ". . . Mr. Lines was not only the beneficial owner of the securities prior to and at the time of his decease, but under the reserved power of modifica-

tion, revocation, etc., he had absolute control of the disposition to be made of the securities upon his decease. At any time prior thereto, he could have modified or revoked the trust in favor of the beneficiaries named in the deed. It is true the legal title to the securities was in the Trust Company, but aside from mere compensation for its services, as custodian of the property, the company had no beneficial interest therein. In any proper sense of the term, the securities were the personal property of Mr. Lines. They were his to enjoy during his lifetime, and his to dispose of, in any manner he saw fit, at any time, prior to his decease . . ."

The provision in the trust agreement in the instant case that there shall be no right to the survivor of the donors to revoke this trust in any manner does not in the least affect the donors' proprietorship by the entireties in these securities, during the joint lifetime of the donors. Nor can we agree with the appellant's further argument that ". . . It may be that this created in them, so long as the trust should exist, an estate by the entireties in the equitable interest in the income of the trust property, but they had no interest or estate whatsoever in the corpus of the trust . . ."

This court has clearly defined the interest of a life tenant in the income of a trust for personal property as a "right in rem, an actual property interest in the subject matter of the trust, an equitable ownership of the trust res", in the case of the *Commonwealth v. Stewart*, 338 Pa. 9, 12 A. 2d 444, affirmed 312 U. S. 649, 85 L. Ed. 1101. In that case we said: "The tax levied by the Act of 1935, as amended, is on personal property and on equitable interests therein. It must first be determined, therefore, whether appellee's right to the income of the trust for life constitutes an equitable interest in personal property. For many years academic authorities, in learned articles, have argued the question of the real nature of a beneficiary's interest in a trust,— among them MAITLAND, HOLDSWORTH, AMES, LANGDELL, POUND, SCOTT, and STONE '(now Mr. Justice STONE of

the Supreme Court of the United States). According to the one school, the rights of the beneficiary are merely in personam, that is, only against the trustee and without any property right in the trust res itself, a mere chose in action. This view undoubtedly represents the early juridical conception of the status of a cestui que trust. But the modern trend of equity jurisprudence has inclined toward the doctrine that, in addition to rights against the trustee, the beneficiary also has rights in rem, an actual property interest in the subject-matter of the trust, an equitable ownership of the trust res."

Having established that the beneficiaries here have an actual property interest in the trust res, it follows that the property interest so held was held jointly by the husband and wife, and thus was created an estate by the entireties in the trust res. "The estate is established even though there is no agreement between the spouses to that effect." *Wilbur Trust Company v. Knadler et al.,* 322 Pa. 17, 21, 185 A. 319. When, therefore, the husband died the Commonwealth was entitled to no tax on this estate, since tenancies by entireties are expressly exempted from the operation of the act so that there is no tax in such cases where the first tenant dies: Amendatory Act of July 14, 1936, P. L. 44, 72 PS Sec. 2301.

The Commonwealth also contended that the transfer inheritance tax law imposes the tax upon transfers intended to take effect in possession or enjoyment at or after death, and that here the donors by the retention of the income intended the transfer of the corpus to the beneficiaries "to take effect in possession or enjoyment at or after such death": Section 1 (c) Act of June 20, 1919, P. L. 521, as amended. [72 PS Sec. 2301].

We do not have to decide this question in view of our conclusion that upon the death of the husband the wife became vested with an equitable ownership in the trust res, which upon her death became subject to the tax imposed.

The judgment is affirmed.