**PLASTIPAK PACKAGING, INC., Appellant**

**v.**

**Frederick Peter DePASQUALE; Mark J. DePasquale; Carl B. DePasquale; Mario C. DePasquale.**

**No. 09–1683.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 12, 2010.

Opinion Filed: Jan. 27, 2010.

Walter A. Bunt, Jr., Esq., Eric R.I. Cottle, Esq., Timothy Strong, Esq., Nicholas

P. Vari, Esq., K & L Gates, Pittsburgh, PA, for Appellant.

Michael R. Plummer, Esq., Plummer & Finnerty, Pittsburgh, PA, for Frederick Peter DePasquale, Mark J. DePasquale, Carl B. DePasquale, Mario C. DePasquale.

Before: SCIRICA, Chief Judge, BARRY and SMITH, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Plastipak Packaging, Inc. ("Plastipak"), a manufacturer of plastic containers, has been seeking payment since 1995 for plastic bottles it manufactured for Mac–Jam, Inc. d/b/a Regent Bottling Co. ("Mac–Jam"), a soft drink bottler.[1] In February of 1999, Plastipak obtained a judgment against Mac–Jam. In an effort to collect on that judgment, Plastipak filed an action against Mac–Jam's sole shareholder, Frederick P. DePasquale ("Mr. DePasquale," together with his non-party wife, the "DePasquales"), and won a $767,393.62 judgment against Mr. DePasquale in 2001.[2] Plastipak now seeks to satisfy the judgment by executing on certain moneys (the "Moneys") which the DePasquales recently transferred from their joint bank account (the "Bank Account") to a life insurance policy (the "Policy") owned by Mr. DePasquale for the benefit of his wife.

The first issue on appeal is whether the District Court erred in refusing to permit Plastipak to execute on the Policy, which is protected from Mr. DePasquale's creditors by Pennsylvania's exemption statute, 42 Pa. Cons.Stat. § 8124.[3] The second issue is whether the Court abused its discretion in refusing to allow additional discovery, i.e., refusing to allow Plastipak to depose the DePasquales in hopes of finding evidence that the DePasquales, albeit inexplicably, intended to terminate their tenancy by the entireties in the Moneys in the Bank Account prior to transferring the Moneys to the Policy (and thereby exposing Mr. DePasquale to liability for fraudulent transfer).[4]

### I. Jurisdiction & Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have juris-

---

1. From the early 1980s until sometime in 1995, Mac–Jam and Plastipak had an ongoing business relationship in which Plastipak supplied Mac–Jam with plastic bottles. In December of 1995, Plastipak filed a lawsuit against Mac–Jam alleging breach of contract.

2. The merits of the action before us, which were decided by a jury eight years ago, revolved around whether Mac–Jam was Mr. DePasquale's alter ego, and whether he had engaged in the fraudulent transfer of property under the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa. Cons.Stat. §§ 5105–5110. On December 7, 2001, a jury found that Mac–Jam was his alter-ego, and judgment was entered against him in the amount of $767,393.62. The jury found in his favor on the fraudulent transfer count.

3. 42 Pa. Cons.Stat. § 8124(c) provides that:
   Insurance proceeds.-The following property or other rights of the judgment debtor shall be exempt from attachment or execution on a judgment:

   . . . .

   (6) The net amount payable under any annuity contract or policy of life insurance made for the benefit of or assigned to the spouse, children or dependent relative of the insured, whether or not the right to change the named beneficiary is reserved by or permitted to the insured. The preceding sentence shall not be applicable to the extent the judgment debtor is such spouse, child or other relative.

4. The most important of several flaws in Plastipak's theory (which it wishes to explore with further discovery) is that even if Mr. DePasquale fraudulently transferred the Moneys to the Policy, the Moneys are now safe and unreachable, and Plastipak seems to have no basis to recover them either in law or in equity.

diction under 28 U.S.C. § 1291. We review the factual findings of the District Court for clear error; the legal conclusions are subject to plenary review. *Del. River & Bay Auth. v. Kopacz*, 584 F.3d 622, 626 n. 5 (3d Cir.2009). "A district court's denial of discovery is reviewed for abuse of discretion." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 235 (3d Cir.2007).

## II. *Discussion*

Plastipak is asking for essentially the same equitable relief which we already considered and denied in Plastipak's first appeal before us, in this very same action, in 2003. *See Plastipak Packaging, Inc. v. DePasquale*, 75 Fed.Appx. 86 (3d Cir. 2003).[5] In its first appeal before us, Plastipak argued for access to certain funds in the same Policy on equitable grounds, in the form of the "judicial estoppel" remedy. We rejected Plastipak's arguments because, despite the allegations of fraudulent transfer, judicial estoppel "would punish the interests of an innocent third party, DePasquale's wife," who was the Policy's beneficiary. *Id.* at 94 n. 9 (citing *Montrose Med. Group Participating Savs. Plan v. Bulger*, 243 F.3d 773, 778 (3d Cir.2001) (we incorrectly cited to page 777)).

### A. Execution on the Policy

Plastipak now argues that the Moneys in the Policy can be reached via another equitable remedy: a constructive trust. However, our consideration of whether to impose a constructive trust requires that we balance the same equities that we considered in Plastipak's earlier request for judicial estoppel. *See Janus Mgmt. Servs., Inc. v. Schlessinger*, 810 A.2d 637, 642 (Pa.Super.2002). It is, to say the least, disturbing that the parties have not even mentioned this in their briefs.

■ The equitable factors weighing against allowing Plastipak to reach the funds in the Policy have not changed. Mrs. DePasquale remains the beneficiary of the Policy. Mr. DePasquale is accused now, as before, of misusing the Policy to hide assets. Regardless of whether our earlier ruling is relevant under equitable or judicial estoppel or as the law of the case, it is appropriate to affirm.[6] The DePasquales' intentions, vis-à-vis whether the Moneys in the Bank Account were held in a tenancy by the entireties, are irrelevant because the Moneys are now safely in the Policy.

Moreover, as we explained in the prior appeal, the Policy is also protected by law. The plain language of the Pennsylvania exemption statute, 42 Pa.C.S. § 8124, makes clear that, regardless of the subjective intent of Mr. DePasquale when he took out the Policy, the funds are safe from his creditors.[7] Plastipak has offered neither arguments nor any case that even

---

5. In that appeal, Mr. DePasquale appealed certain evidentiary and other rulings, and Plastipak cross-appealed the District Court's decision protecting certain funds held in the same Policy now at issue before us.

6. Plastipak cites two factually dissimilar cases for the proposition that a constructive trust is appropriate here: *Fidelity Trust Co. v. Union National Bank of Pittsburgh*, 313 Pa. 467, 169 A. 209 (1933) and *Nagle v. Nagle*, 799 A.2d 812 (Pa.Super.2002). Those cases are simply inapplicable under the circumstances here,

and we reject them without further discussion.

7. Section 8124 specifically provides exceptions to other exemptions. 42 Pa.C.S. § 8124. For example, the exemption for certain retirement funds, under § 8124(b)(1)(ix), includes an exception for "[a]mounts deemed to be fraudulent conveyances." 42 Pa.C.S. § 8124(b)(1)(ix). The insurance exemption applicable in the case before us, at § 8124(c), contains no such exception. 42 Pa.C.S. § 8124.

suggests that Pennsylvania law allows creditors to access otherwise-protected assets on proof of the debtor's subjective intent.

In any event, the factual findings of the District Court are not clearly erroneous. The record supports the Court's finding that there is not clear and convincing evidence that the DePasquales intended to sever the tenancy by the entireties with respect to the Moneys. *See Johnson v. Johnson*, 908 A.2d 290, 296 (Pa.Super.2006) (noting that Pennsylvania law creates a rebuttable presumption that property is held in tenancy by the entireties, which may be overcome by clear and convincing evidence). The Court found that the Moneys were so-held until the moment they were transferred to the Policy. The Moneys were never accessible to Plastipak and were never in Mr. DePasquale's individual control, and so could not have been fraudulently transferred.[8]

## B. The Discovery Issue

The District Court did not abuse its discretion in refusing to allow additional discovery, and, in particular, the deposi-

tions of the DePasquales. Plastipak argues that it is entitled to an opportunity to depose the DePasquales in order to confirm its theory that, at some point, the DePasquales decided to sever their tenancy by the entireties of certain funds in the Bank Account, thereby rendering those funds vulnerable to attachment. If the DePasquales transferred the Moneys while the Moneys were held in tenancy by the entireties, the DePasquales are not subject to liability for fraudulent transfer. *See C.I.T. Corp.*, 5 A.2d at 129. On the other hand, if the tenancy by the entireties was severed before the Moneys were transferred to the Policy, then Mr. DePasquale alone transferred the Moneys to the Policy and Mr. DePasquale could be liable for fraudulent transfer.

■ The District Court denied the discovery request as untimely and because, "given the litigious history of these parties, it is unlikely that further discovery, briefing and an evidentiary hearing would be consistent with the just, speedy, and inexpensive determination of this action." *Plastipak Packaging, Inc. v. DePasquale,*

---

**8.** The issue is rarely discussed (the leading case was decided in 1939). *See C.I.T. Corp. v. Flint,* 333 Pa. 350, 5 A.2d 126, 129 (1939) (creditors could not challenge a transaction which spouses engaged in for the admitted purpose of preventing husband from becoming the owner by survivorship). In any event, as a matter of logic, it is unlikely that the DePasquales could reasonably be accused of trying to hinder creditors by transferring the Moneys from one protected asset (the Bank Account, held in a tenancy by the entireties) to another (the Policy). Addressing this issue, Plastipak offers only the conclusory statement that, even if the Moneys were held in a tenancy by the entireties prior to being transferred to the Policy, there was still a fraudulent transfer because the Bank Account "had been deemed to be subject to execution." (Plastipak Br. at 29.) Plastipak cites no cases in support of this proposition, and, regardless, to say that the Bank Account had

been "deemed to be subject to execution" is misleading. (*Id.*) In 2004, a Pennsylvania trial court refused to sustain objections to a writ of execution on certain funds held in the Bank Account which the court found were not held in a tenancy by the entireties. *See Plastipak Packaging, Inc. v. DePasquale,* GD No. 03–19032 (Ct. Com. Pl., Allegheny County, Civ. Div. August 3, 2004). However, another Pennsylvania trial court later held that the Bank Account was not subject to execution vis-à-vis certain funds awarded to the DePasquales in a separate lawsuit because those funds were awarded to the DePasquales jointly. *See Plastipak Packaging, Inc. v. DePasquale,* GD No. 03–19032 (Ct. Com. Pl., Allegheny County, Civ. Div. Nov. 30, 2006). Similarly, the Moneys at issue here, which were awarded to the DePasquales jointly after an arbitration proceeding, were never subject to execution when they were on deposit in the Bank Account.

No. 99–cv–245, 2009 WL 186139, at *2 (W.D.Pa. Jan.27, 2009).[9] It appears that the Court may have been incorrect in concluding that Plastipak's requests were untimely, but the Court surely did not err, much less abuse its discretion, in refusing to allow additional discovery.

First, we discourage "fishing expeditions." *See Ranke v. Sanofi–Synthelabo Inc.,* 436 F.3d 197, 204 (3d Cir.2006). Plastipak's proposal to depose the DePasquales in hopes that it will find a legal theory by which it could attach Mr. DePasquale's assets bears all the hallmarks of a fishing expedition, particularly given that there is no evidence that the DePasquales intended to sever their tenancy by the entireties. Indeed, we have no more reason than did the District Court to believe that the DePasquales intended to do so.[10] Plastipak's argument that Mr. DePasquale evinced his intent to sever by writing a check to the Policy is unavailing. Plastipak offers no support for the proposition that an intention to separate property in the future severs the tenancy in the present. Moreover, Pennsylvania law is clear that both parties—not just one— must intend to sever a tenancy by the entireties. *Clingerman v. Sadowski,* 513 Pa. 179, 519 A.2d 378 (1986).

Finally, Plastipak argues that if the DePasquales severed their tenancy by the entireties, then Mr. DePasquale could be liable for fraudulent transfer under Pennsylvania's fraudulent conveyances statute, 12 Pa. Cons.Stat. § 5104. However, Plastipak has failed to show how Mr. DePasquale's alleged fraudulent transfer would change the fact that the Moneys are now safely out of reach, and that Plastipak has no remedy at law or, under the circumstances, in equity, by which it can reach the Moneys in the Policy. Plastipak's repeated conclusory statements about how the case turns on the intent of the DePasquales are not persuasive.

### III. *Conclusion*

We will affirm the order of the District Court.

---

9. Plastipak argues that "the [D]istrict [C]ourt denied Plastipak's discovery requests *only* because they were supposedly untimely." (Plastipak Br. at 23). We disagree.

10. As the District Court explained, in its opinion denying Plastipak's motion for reconsideration:

> [T]here was no basis to conclude that Mrs. DePasquale ever acted to sever the entireties ownership. The proceeds at issue .were: (1) in the form of a check made out ·to Mrs. DePasquale; (2) deposited into a

joint checking account; and (3) sent to Penn Mutual to restore the value of Mrs. DePasquale's interest as a death beneficiary. Plastipak's argument that these proceeds somehow became the sole property of Mr. DePasquale borders on the frivolous. The Court adheres to the analysis in the January 29 Order.

*Plastipak Packaging, Inc. v. DePasquale,* No. 99–cv–245, 2009 WL 501888, at *2 (W.D.Pa. February 27, 2009).